# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### August 21, 2012 Session

## STATE OF TENNESSEE v. THEODORE LOCKLIN

**Appeal from the Criminal Court for Hamilton County**
**Nos. 259330, 259331, 259559      Don W. Poole, Judge**

**No. E2012-00083-CCA-R3-CD - Filed November 13, 2012**

The Defendant, Theodore Locklin, appeals the Hamilton County Criminal Court's order revoking his probation for aggravated burglary, a Class C felony, and ordering his six-year sentence into execution. On appeal, the Defendant contends that the evidence is insufficient to revoke his probation. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which ALAN E. GLENN and JEFFREY S. BIVINS, JJ., joined.

Robin Ruben Flores, Chattanooga, Tennessee, for the appellant, Theodore Locklin.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Senior Counsel; William H. Cox, III, District Attorney General; and Cameron Williams, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On November 7, 2006, the Defendant pleaded guilty to various theft-related offenses in three separate indictments and received concurrent probationary sentences for each offense. In case number 259330, the Defendant pleaded guilty to theft over $1000 and aggravated burglary. He received two years for the theft conviction and six years for the aggravated burglary conviction. In case number 259331, the Defendant pleaded guilty to theft over $1000 and burglary and received three years for each conviction. In case number 259559, the Defendant pleaded guilty to theft over $1000 and aggravated burglary. He received two years for the theft conviction and six years for the aggravated burglary conviction.

On March 18, 2009, a probation violation report was filed, alleging the Defendant failed to notify his probation officer before changing his residence, tested positive for marijuana and cocaine twice, and failed to pay supervision fees. On March 23, 2009, a probation violation warrant was issued. The Defendant conceded that he violated the conditions, and the trial court extended the Defendant's sentences by one year. On August 4, 2009, an addendum was filed for a new conviction for domestic assault. On June 8, 2011, a second probation violation was filed, alleging the Defendant was arrested on a new theft charge, failed to comply with the conditions of the Administrative Case Review Committee (ACRC), and failed to pay supervision fees, court costs, and fines. On June 10, 2011, a probation violation warrant was issued. The trial court and the parties agreed that the Defendant's six-year sentence for the aggravated burglary conviction in case number 259330 was the only unexpired sentence.[1]

At the revocation hearing, Robert Haynes testified that he owned Haynes & Haynes, LLC, a commercial industrial tire and trucking business, and that he was a victim of a burglary in April 2011. He said that he noticed the hood up on one of his trucks, that he went to investigate, and that he found ten truck batteries missing from his eighteen-wheeler trucks. He said he closed at 5:00 the previous evening and agreed he noticed the missing parts at 8:00 or 9:00 the next morning. He said the parts were worth $1200 to $1400.

Mr. Haynes testified that the thief entered his property by pulling up the surrounding fence, propping up the fence with a piece of wood, and crawling underneath. He said the batteries were heavy. He agreed the police found the batteries at a local battery company around 11:00 a.m. He said the investigating police officer told him that one of the suspects was positively indentified. He said that he did not know the Defendant before the theft and that he did not know if the Defendant had been on his property before the theft.

On cross-examination, Mr. Haynes testified that he called his son, Lebron Haynes, to come to work when he discovered the batteries were missing. He identified the affidavit of complaint showing that he previously valued the missing parts at $714 and said the affidavit of complaint was completed before he realized the extent of the theft. Although he did not know how many people were involved in the theft, he said the police officer told him that three people were involved. He agreed he did not know if the Defendant purchased the batteries from a third person and attempted to sell them to the battery company.

---

[1] We note that although the parties agreed with the trial court that the six-year sentence for the aggravated burglary conviction in case number 259330 was the only unexpired sentence at the time the revocation warrant issued on June 10, 2011, the record shows that the Defendant was convicted of a second aggravated burglary in case number 259559 and was sentenced to six years' probation on November 7, 2006. This sentence was extended by one year in 2009.

Chuck Bateman testified that he owned Quality Battery and Auto Repair and that he was working Saturday morning around 10:30 or 11:00 when three people entered his store to sell ten batteries. He said that he asked for identification and that one of the people told the Defendant to provide his identification. He stated that he wrote down the Defendant's name, address, and driver's license number, and that he paid $100 to $110 for the batteries. He said he saw the batteries being unloaded from their vehicle but did not recall if it was a truck. He did not know who drove. He said he would have reconditioned the batteries or used them for scrap metal had he been allowed to sell them. He said that the Defendant presented a driver's license and that he would not have accepted the batteries without it. He said he lost $100 to $110 on the sale.

On cross-examination, Mr. Bateman testified that although he did not see the three people get out of the same vehicle, he said they came into his store together and knew each other. He said the person who did most of the talking spoke to the Defendant, identified the Defendant by name, and told the Defendant to provide his identification. He agreed that he handwrote on a piece of paper the information from the driver's license, that he gave the money to the person who did most of the talking, and that he did not see him distribute the money to the Defendant and the third person. He denied seeing the Defendant before this transaction.

Veronica Heard, a manager with the Board of Probation and Parole, testified that the Defendant's probation officer was no longer employed but that she was familiar with the Defendant's file. She said that the most recent probation violation report alleged the Defendant was arrested for theft, failed to comply with the requirements of the ACRC, and failed to pay supervision fees, court costs, and fines. She said the ACRC convened a hearing to discuss the Defendant's behavior in lieu of filing a probation violation report. She said that the Defendant previously violated his probation by testing positive for drugs twice, committing domestic assault, failing to notify his probation officer before changing his residence, and failing to pay fees.

On cross-examination, Ms. Heard testified that the Defendant's previous probation officer resigned and moved away. She denied the officer's leaving was due to bad performance reviews. She agreed that the Defendant told his probation officer he was applying for Social Security disability benefits, that the probation officer told the Defendant to present documentation of his application, and that on November 19, 2010, the probation officer gave the Defendant an exemption for his fees after he provided her documentation. She said that the Defendant failed to present his probation officer with proof he was actively looking for a job before November 19.

Ms. Heard testified that on September 9, 2009, the Defendant told his probation officer that he lost his job, was evicted from his home, and moved to a new residence. She said the Defendant was told that he could not move without permission from his probation officer. She said that the Defendant told his probation officer he did not have an excuse. She agreed the Defendant had not moved without permission since the ACRC meeting.

The trial court revoked the Defendant's probation and ordered his sentence into execution. The court did not find that the Defendant violated his probation because of a lack of employment, noting the Defendant may have been disabled. The court did not find that the Defendant violated the conditions placed on him by the ACRC because there was no evidence presented with regard to the substance of the conditions. The court found, though, that the report showed the Defendant was arrested for driving on a revoked license, which the court gave "slight weight" to conclude that he violated the conditions of his probation. The trial court also found that the Defendant paid his fees, excluding the exempt fees.

With regard to the theft of Mr. Haynes's truck batteries, the court found by a preponderance of the evidence that the Defendant violated the conditions of his probation. The court found that the Defendant violated the law by committing theft and being in possession of the batteries a short time after the theft took place. This appeal followed.

**I**

The Defendant contends that the evidence is insufficient to revoke his probation. He argues that there were no witnesses who testified that the Defendant entered Mr. Haynes's property or removed the batteries from the trucks. The State responds that the evidence was sufficient to revoke the Defendant's probation. We agree with the State.

A trial court may revoke probation upon its finding by a preponderance of the evidence that a violation of the conditions of probation has occurred. T.C.A. § 40-35-311(e) (2010). "In probation revocation hearings, the credibility of witnesses is to be determined by the trial judge." State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991) (citing Carver v. State, 570 S.W.2d 872 (Tenn. Crim. App. 1978)). If a trial court revokes a defendant's probation, its options include ordering confinement, ordering the sentence into execution as originally entered, returning the defendant to probation on modified conditions as appropriate, or extending the defendant's period of probation by up to two years. T.C.A. §§ 40-35-308(a), (c), -310 (2010); see State v. Hunter, 1 S.W.3d 643, 648 (Tenn. 1999). The judgment of the trial court in a revocation proceeding will not be disturbed on appeal unless there has been an abuse of discretion. See State v. Williamson, 619 S.W.2d 145, 146 (Tenn. Crim. App. 1981). In order for this court to find an abuse of discretion, "there must be no substantial evidence to support the conclusion of the trial court that a violation of the

conditions of probation has occurred." State v. Shaffer, 45 S.W.3d 553, 554 (Tenn. 2001).

Here, the record contains sufficient proof that the Defendant violated a condition of his probation. The evidence shows that the Defendant entered Quality Battery and Auto Repair with two unidentified men who attempted to sell stolen truck batteries. Mr. Bateman saw the batteries being unloaded from the men's vehicle. The Defendant and the two men entered the store together, and Mr. Bateman said the men appeared to know each other. Although the Defendant did not talk much while inside the store, the man who did most of the talking identified the Defendant by name and told the Defendant to show Mr. Bateman his identification. The Defendant complied. This constituted sufficient proof to support the court's finding that the Defendant violated his probation. The record reflects that the trial court properly found that the Defendant violated his probation and that it exercised proper discretion in revoking the Defendant's probation and ordering the Defendant to serve his original sentence.

Based on the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON,  PRESIDING JUDGE