# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
# AT NASHVILLE

Assigned on Briefs November 12, 2014

## STATE OF TENNESSEE v. JORDAN ALEXANDER RODRIGUES

**Appeal from the Circuit Court for Marshall County**
**No. 2010-CR-95     Franklin L. Russell, Judge**

_____

**No. M2014-01001-CCA-R3-CD - Filed March 27, 2015**

_____

The Defendant-Appellant, Jordan Alexander Rodrigues, appeals the revocation of his probation by the Marshall County Circuit Court. He previously entered a guilty plea to burglary for which he received a three-year suspended sentence. In this appeal, he argues that the trial court abused its discretion by revoking his probation and ordering a sentence of full confinement rather than imposing split confinement. Upon our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT H. MONTGOMERY, JR., JJ., joined.

William H. Harold, Lewisburg, Tennessee, for the Defendant-Appellant, Jordan Alexander Rodrigues.

Robert E. Cooper, Jr., Attorney General and Reporter; Caitlin E. D. Smith, Assistant Attorney General; Robert Carter, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

On March 14, 2014, a warrant for the Defendant-Appellant's arrest was issued for violating the terms and conditions of his probation based on a new arrest for domestic violence assault against his brother, Joseph Rodrigues, and failing to refrain from engaging in assaultive, abusive, or threatening behavior. On May 13, 2014, the Defendant-Appellant entered a guilty plea to the probation violation in the instant case. At the revocation hearing, Brittney Williams, the Defendant-Appellant's fiancée, testified

that she had been in a relationship with the Defendant-Appellant for almost three years, and they shared a one-year old daughter. She stated that the Defendant-Appellant had worked at Andy's Tires for almost one year and that she relied on his income because she was unemployed. Ms. Williams was present during the altercation between the Defendant-Appellant and his twin brother, Joseph Rodrigues, on March 8, 2014. She stated that the Defendant-Appellant's brother instigated the altercation and that the Defendant-Appellant acted in self-defense.

Gerard Rodrigues, the Defendant-Appellant's father, testified that he and his wife adopted the Defendant-Appellant when he was nine years old. Although Mr. Rodriques was not present during the altercation between the Defendant-Appellant and his brother, Joseph, he explained that Joseph was "mouthy" and that Joseph usually started fights. Mr. Rodrigues stated that Joseph would "torment[] [the Defendant-Appellant] until finally [Joseph] finds out it's not doing anything and he'll take and push [the Defendant-Appellant] or something like that."

On cross-examination, Mr. Rodrigues was shown the January 12, 2012 arrest warrant sworn out against the Defendant-Appellant for assaulting his other brother, Robert Rodrigues, and agreed that the Defendant-Appellant had previously been charged with domestic assault. Although Mr. Rodrigues said the warrant "left a lot out," he confirmed that the Defendant-Appellant's probation had been revoked as a result.

Andrew Junior Gill, the owner of Andy's Tires and the Defendant-Appellant's former employer, testified that the Defendant-Appellant had worked for him for approximately two and a half years, that he was a good employee, and that he would offer the Defendant-Appellant a job if he was granted probation.

The Defendant-Appellant testified and agreed that he struck his brother, Joseph Rodrigues, on March 8, 2014. He explained that he was acting in self-defense because his brother struck him first, several times. When asked why he did not call the police or attempt to leave during the altercation, the Defendant-Appellant stated that he did not have a phone and was unable to get away from his brother. The Defendant-Appellant further explained that prior to the altercation, his brother had pestered him over the phone and had come to his work looking for money. When he refused to give his brother any money, his brother stole the Defendant-Appellant's anxiety medication, which left the Defendant-Appellant "on edge." The Defendant-Appellant testified that he had been without his medication for almost a week and a half at the time of the altercation. He said he was not using any other drugs and had otherwise complied with the conditions of his probation.

On cross-examination, the Defendant-Appellant said he did not leave when his

brother struck him because "[he] was trapped in a corner." He further acknowledged that he was found guilty of the instant domestic assault against his brother, Joseph Rodrigues, in general sessions court.

Crystal Gray, the Defendant-Appellant's probation supervisor, filed a probation violation report based on the Defendant-Appellant's second domestic violence assault arrest and his failure to refrain from engaging in assaultive, abusive, or threatening behavior.[1] Her report showed that the Defendant-Appellant had been originally sentenced to three years probation on August 18, 2012, and that his probation had been revoked on January 2, 2013, for assaulting his other brother, Robert Rodrigues. Following his revocation for his first violation, the Defendant-Appellant was required to serve thirty days' incarceration and placed back on probation for the remainder of his sentence. She explained that the Defendant-Appellant was subject to the same terms and conditions of his probation as previously ordered. Upon his release, the Defendant-Appellant complied with the conditions of his probation until he was arrested again for the instant domestic assault against his brother, Joseph Rodrigues.

At the concusion of the hearing, the trial court revoked the Defendant-Appellant's probation and ordered him to serve the balance of his sentence in confinement. It is from this order that the Defendant-Appellant now timely appeals.

**ANALYSIS**

On appeal, the Defendant-Appellant argues that the trial court erred by requiring him to serve the balance of his sentence in confinement. He asserts that the trial court should have imposed a sentence of split confinement and that a sentence of full incarceration based on the facts "essentially amounts to an abuse of discretion." In response, the State contends that, based on the Defendant-Appellant's history of violating his probation by committing domestic assault, the trial court properly revoked his probation. We agree with the State.

After determining that a defendant "has violated the conditions of probation and suspension by a preponderance of the evidence, the trial judge shall have the right . . . to revoke the probation and suspension of sentence, and . . . [c]ause the defendant to commence the execution of the judgment as originally entered, or otherwise, in accordance with § 40-35-310[.]" T.C.A. § 40-35-311(e) (2012). Probation revocation rests within the sound discretion of the trial court, and this court will not disturb the trial court's ruling absent an abuse of that discretion. State v. Shaffer, 45 S.W.3d 553, 554 (Tenn. 2001) (citing State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991)). To establish an

---

[1] Ms. Gray signed the probation violation report by spelling her name as "Gray"; however, the transcript spells her name as "Grey."

abuse of discretion, "there must be no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." Id. (citing Harkins, 811 S.W.2d at 82). Once the trial court decides to revoke a defendant's probation, it may (1) order confinement; (2) order the sentence into execution as initially entered, or, in other words, begin the probationary sentence anew; (3) return the defendant to probation on modified conditions as necessary; or (4) extend the probationary period by up to two years. See State v. Hunter, 1 S.W.3d 643, 647 (Tenn. 1999) (citations omitted); State v. Larry Lee Robertson, No. M2012-02128-CCA-R3CD, 2013 WL 1136588, at *2 (Tenn. Crim. App. Mar. 19, 2013); State v. Christopher Burress, No. E2012-00861-CCA-R3-CD, 2013 WL 1097809, at *6 (Tenn. Crim. App. Mar. 18, 2013); T.C.A. §§ 40-35-308, -310, -311 (2012). The trial court determines the credibility of the witnesses in a probation revocation hearing. State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991) (citing Carver v. State, 570 S.W.2d 872 (Tenn. Crim. App. 1978)).

In support of its order revoking the Defendant-Appellant's probation, the trial court stated:

> This is not the first time. He's had previous revocations, same problem. This, I was cornered, which is a self-defense issue being raised here. It was certainly not successful below. He was convicted. And therefore, I am going to revoke him to serve the balance of his sentence.

In challenging the court's imposition of confinement, the Defendant-Appellant insists that, "the sentence imposed was not that which was deserved for the committed infraction of the rules of probation." He argues that a sentence of split confinement would be more commensurate with the totality of the circumstances surrounding the violation because he was acting in self-defense. However, the trial court fully considered the testimony regarding this issue at the revocation hearing and determined, based on the conviction in general sessions court, that it was not credible. Moreover, the trial court revoked the Defendant-Appellant's probation because this was his second violation of probation involving domestic violence assault. The record more than supports the trial court's revocation of the Defendant-Appellant's probation and imposition of confinement. See State v. Jeffrey A. Warfield, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. Feb. 10, 1999), perm. app. denied (Tenn. June 28, 1999) (holding that "an accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing"). Discerning no abuse of discretion, the Defendant-Appellant is not entitled to relief.

## CONCLUSION

Upon our review, we affirm the judgment of the Marshall County Circuit Court.


_____

CAMILLE R. MCMULLEN, JUDGE