IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 24, 2018

## STATE OF TENNESSEE v. LARRY SYLVESTER WOODS

**Appeal from the Criminal Court for Hamilton County**
**No. 293419    Barry A. Steelman, Judge**

_____

### No. E2017-00999-CCA-R3-CD

_____

The Defendant, Larry Sylvester Woods, appeals from the Hamilton County Criminal Court's revocation of probation for his Range I, two-year sentence for burglary of a business, a Class D felony. *See* T.C.A. § 39-14-402 (2014). He contends that the trial court erred in revoking his probation and ordering him to serve his sentence, rather than ordering him to participate in a drug treatment program. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Steven E. Smith, District Public Defender; Joseph Barlett (Jay) Underwood, Jr., Assistant District Public Defender, for the appellant, Larry Sylvester Woods.

Herbert H. Slatery III, Attorney General and Reporter; Leslie E. Price, Senior Counsel; M. Neal Pinkston, District Attorney General; Jason Demastus, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

Pursuant to a guilty plea agreement, the Defendant was sentenced to probation on December 16, 2014. On September 18, 2015, a violation warrant was issued and alleged that the Defendant violated two rules of probation related to his having moved without notifying his probation officer and to his failure to report to his probation officer. On January 21, 2016, the trial court revoked the Defendant's probation and ordered him to serve six months in the workhouse before being returned to probation for the balance of his sentence. A second violation warrant was issued on May 9, 2016. It alleged that after the Defendant's determinate release from confinement, he failed to report to his probation

officer. On July 11, 2016, the Defendant acknowledged he had violated the terms of probation, and the court ordered a "Full Revocation," although the record reflects that the Defendant was returned to probation on August 20, 2016. On December 15, 2016, a third violation warrant was issued, which is the subject of the present appeal. The warrant alleged that the Defendant had not reported to his probation officer since attending an orientation on August 31, 2016, and that the officer had been unable to locate the Defendant at the Defendant's reported residence. An addendum to the third violation warrant was filed on March 10, 2017, which alleged additional violations in that the Defendant had been convicted of criminal impersonation and evading arrest on January 5, 2017, and that he had failed to report his arrest. After the Defendant was taken into custody and pursuant to the Defendant's request, the court ordered an evaluation to determine his eligibility for treatment at a Council for Alcohol and Drug Abuse Services (CADAS) facility.

At the April 17, 2017 revocation hearing, Christina Barnes, an employee of the Department of Probation and Parole, testified that the Defendant reported to the probation office twice after his determinate release in August 2016. Ms. Barnes said that a person who was no longer employed by her office attempted a home visit for the Defendant at the Defendant's mother's house after the Defendant's August 26 and 31, 2016 reports to the office. Ms. Barnes said that the Defendant's mother had stated that she was unaware of the Defendant's whereabouts and that on this basis, a violation warrant was filed. Ms. Barnes stated that the Defendant was charged in December with criminal impersonation and evading arrest and that he pleaded guilty to these offenses on January 5, 2017.

The thirty-nine-year-old Defendant testified that he had been incarcerated in the Department of Correction for thirty-three days relative to the present case. He agreed with Ms. Barnes's account of his history of reporting since his release from the Department of Correction. He said that he had no criminal history prior to 2010, when he had been thirty-four or thirty-five years old. He said that his criminal history began when he started to "hang out with the wrong crowd and partying" and that he began using methamphetamine. He said that he had issues with methamphetamine but not with other drugs and that he had never done anything to address his drug problem. He said that he asked his attorney to help him obtain drug treatment and that he had undergone a CADAS evaluation. A letter from a CADAS admissions counselor recommending the Defendant for the adult intensive outpatient program was received as an exhibit. The Defendant expressed his desire to participate in the CADAS program and said he thought it would help him "get back on track." The Defendant stated that before 2010, he had been employed as a welder for two years and as a maintenance worker for fourteen years. He said that he had been married for approximately twenty-two years. He said his wife had tried to help him address his drug problem. He attributed his failure to report to his

probation officer to his methamphetamine problem. He said he absconded after he resumed using methamphetamine.

Regarding his recent charges and convictions, the Defendant stated that a police officer stopped him when the Defendant was riding a bicycle on the wrong side of the road. The Defendant stated that because he knew he had outstanding warrants, he gave the officer the Defendant's brother's name as his own and that he ran when the officer searched and found the Defendant's identification. The Defendant stated that the officer used a Taser on him and hit the Defendant's face with a flashlight.

The Defendant testified that he sincerely wanted to address his drug habit. He said he wanted to be a good father to his four daughters, who ranged in age from four months to thirteen years. He stated that he "won't let them down this round" if he were allowed to remain on probation.

The Defendant's wife testified that she and the Defendant had been married for nineteen years. She stated that the Defendant did not use drugs before 2010. She said that before he began using drugs, the Defendant had been a dedicated and loving father and husband. She said that she had tried to help the Defendant with his drug problem by giving him ultimatums and by refusing to allow him to move in with her and their infant unless he stopped using drugs but that he had never participated in a "formal program." She said that the Defendant had good family support and that his mother and uncle were present in court. The Defendant's wife stated that the Defendant had attempted to stop using drugs and to stay away from "certain people" but that he had trouble because "[t]he area that he stayed in was really a major problem." She stated that their three older children lived with her cousin. She said she had not had a home and a way to provide for them but that she now had a home. She said the Defendant had no relationship with the children in the past few years.

The court found that the Defendant violated the terms of probation by absconding and by committing new offenses. The trial court noted that the Defendant had received multiple opportunities to serve his sentence on probation and that he had two prior probation violations. The court noted that the original offense had been related to methamphetamine. The court characterized as "debatable" whether the Defendant's daughters needed him, given the "condition that he has been in . . . since 2010." The court found that the Defendant had been aware of his problem but had not dealt with it. The court found that the best interests of the Defendant, his family, and society were served by the Defendant's serving his sentence. The court stated that if the Defendant wanted to participate in CADAS, he could do so after serving the sentence. The court expressed its skepticism that the Defendant would be successful if afforded another

opportunity to complete his sentence on probation. Thus, the court ordered the Defendant to serve the remainder of his sentence. This appeal followed.

Our supreme court has concluded that a trial court's decision to revoke a defendant's probation "will not be disturbed on appeal unless . . . there has been an abuse of discretion." *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991) (citing *State v. Williamson*, 619 S.W.2d 145, 146 (Tenn. Crim. App. 1981)). An abuse of discretion has been established when the "record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980); *see State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978). When a trial court finds by a preponderance of the evidence that a defendant has violated the conditions of probation, the court "shall have the right . . . to revoke the probation." T.C.A. § 40-35-311(e)(1) (2014). After revoking a defendant's probation, the trial court may return a defendant to probation with modified conditions as necessary, extend the period of probation by no more than two years, order a period of confinement, or order the defendant's sentence into execution as originally entered. *Id*. §§ 40-35-308(a), (c), -310 (2014). "In probation revocation hearings, the credibility of witnesses is for the determination of the trial judge." *Carver v. State*, 570 S.W.2d 872, 875 (Tenn. Crim. App. 1978) (citing *Bledsoe v. State*, 387 S.W.2d 811, 814 (Tenn. 1965)).

The record reflects that the Defendant acknowledged his failure to report to his probation officer, as well as the facts surrounding his recent convictions. Although he professed a motivation to participate in drug treatment and to be a responsible parent to his children, his criminal behavior spanned a period of years, and he had been afforded two prior opportunities to serve the present sentence on probation.

We conclude that the record supports the trial court's finding that the Defendant violated the conditions of his probation and that the court did not abuse its discretion by revoking the Defendant's probation. *See* T.C.A. § 40-35-311(e)(1). Once the court revoked the Defendant's probation, it had the authority to order the Defendant to serve his sentence in confinement. *See id*. §§ 40-35-310. The Defendant is not entitled to relief.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE